T.C. Memo. 2005-267


UNITED STATES TAX COURT


A. WAYNE AND LINDA D. DOUDNEY, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 3548-04, 3549-04.     Filed November 17, 2005.


A. Wayne Doudney and Linda D. Doudney, pro sese.

<u>Ronald S. Chun</u>, for respondent.


MEMORANDUM OPINION


MARVEL, <u>Judge</u>:  By separate notices of deficiency,
respondent determined the following income tax deficiencies and
additions to tax with respect to petitioners' Federal income
taxes:[1]

_____

[1]All section references are to the Internal Revenue Code in
effect for the taxable years in issue, and all Rule references
                                              (continued...)

| Year | Deficiency | Addition to tax sec. 6651(a)(1) |
|------|-----------|----------------------------------|
| 1999 | $23,553 | $1,040.75 |
| 2000 | 32,153 | 6,190.00 |

Petitioners filed a separate petition for each year contesting respondent's determinations.  Because these cases present common issues of fact and law, they were consolidated for trial, briefing, and opinion pursuant to Rule 141(a).

After concessions,[2] the issues for decision are:

(1) Whether petitioners properly deducted capital losses on Schedule D, Capital Gains and Losses, for 1999;

(2) whether respondent properly determined that petitioners had unreported capital gain income for 1999;

(3) whether petitioners properly deducted various expenses on Schedule C, Profit or Loss From Business, for 1999 and 2000;

(4) whether petitioners properly deducted expenses on Schedule F, Profit or Loss From Farming, for 1999 and 2000;

(5) whether petitioners properly deducted real estate taxes, charitable contributions, and unreimbursed business expenses on Schedule A, Itemized Deductions, for 1999;

_____

[1](...continued)
are to the Tax Court Rules of Practice and Procedure.

[2]In the notice of deficiency for 2000, respondent included $640 of unreported capital gain income in petitioners' tax determination.  At trial, petitioner A. Wayne Doudney conceded that this was taxable income to him and his wife.

(6) whether petitioners properly deducted charitable contributions and State and local taxes on Schedule A for 2000;

(7) whether petitioners properly claimed a dependency exemption for a child for 2000; and

(8) whether petitioners are liable for additions to tax under section 6651(a) for 1999 and 2000.[3]

## Background

Petitioners were married during 1999 and 2000. Petitioners resided in Detroit, Texas, when their petitions in these cases were filed. Unless otherwise indicated, petitioner refers to A. Wayne Doudney.[4]

On July 27, 2002, petitioners mailed Forms 1040X, Amended U.S. Individual Income Tax Returns, for 1999 and 2000 to respondent, who received them on July 29, 2002.[5] After petitioners mailed the amended returns, respondent requested

---

[3]Respondent also determined self-employment adjustments of $306 and $4,137 for 1999 and 2000, respectively. The adjustments are computational and turn on our resolution of the issue of deductibility of the Schedules C, Profit or Loss From Business, and F, Profit or Loss From Farming, expenses. Petitioners did not separately challenge the adjustments, and we do not further discuss them.

[4]Mr. Doudney attended the trial alone, but he stated on the record that Mrs. Doudney authorized him to speak on her behalf during the trial in these cases.

[5]There is no evidence in the record to show whether petitioners filed original Forms 1040, U.S. Individual Income Tax Returns, for the years in issue and, if so, when.

documentation regarding the dependency exemption for a child and for the following items:

| Description of item | 1999 | 2000 |
|---|---|---|
| Short-term capital loss | ($1,889) | -0- |
| Long-term capital loss | (531) | -0- |
| Schedule C expenses | 42,655 | $42,567 |
| Schedule F expenses | 15,171 | 15,988 |
| Real estate taxes | 8,445 | -0- |
| State/local income taxes | -0- | 3,922 |
| Charitable contributions | 22,636 | 23,127 |
| Unreimbursed business expenses | 8,532 | -0- |
| Rate reduction credit | -0- | 300 |

On a date that does not appear in the record, petitioners sent respondent documentation substantiating certain of the items. Respondent allowed the losses and Schedule A deductions that petitioners substantiated.[6]

On January 21, 2004, respondent issued separate notices of deficiency for 1999 and 2000 that disallowed petitioners' remaining capital losses, increased petitioners' capital gains, disallowed the remaining disputed expenses from Schedules A, C, and F for lack of substantiation, and imposed additions to tax for failing to file timely returns. On February 27, 2004, petitioners filed timely petitions contesting respondent's determinations.

_____

[6]For 1999, respondent allowed real estate taxes of $7,140 and cash contributions of $15,375. In 2000, respondent allowed a deduction for State and local income taxes of $2,603 and the standard deduction of $7,350. For 1999, respondent also allowed a short-term capital loss of $469.46. However, respondent also determined an unreported long-term capital gain in 1999 of $9,882.80. The long-term capital gain is still in dispute.

On December 9, 2004, respondent scheduled a <u>Branerton</u> conference with petitioner regarding respondent's adjustments to petitioners' 1999 and 2000 amended returns. See <u>Branerton Corp. v. Commissioner</u>, 61 T.C. 691 (1974). Petitioner was unable to attend the meeting, but his attorney-in-fact, Mr. Mattatall, attended in his place.[7] At the meeting, Mr. Mattatall produced four "Affidavits of Fact" that summarily declared, among other things, that all of the claimed losses, deductions, and

---

[7]At the time of this trial, Mr. Mattatall had been enjoined by the United States from directly or indirectly "acting as a return preparer or assisting in or directing the preparation of federal tax returns for any person or entity other than himself, or further appearing as a representative on behalf of any person or organization whose tax liabilities [are] under examination by the IRS." <u>United States v. Mattatall</u>, No. CV 03-07016 DDP (PJWx), at 6 (C.D. Cal., Aug. 17, 2004) (order granting plaintiff's motion for contempt and second amended injunction of which we take judicial notice pursuant to Fed. R. Evid. 201). In a footnote to the order, the U.S. District Court for the Central District of California provided the following pertinent explanation:

> In support of its position, the Government attaches the transcript of an interview between the IRS and a taxpayer who brought Mattatall along as his return preparer and representative. At the interview, [Mattatall] insisted that the taxpayer could choose to submit an affidavit that his tax return was correct, and that regardless of the IRS's request for documents or other information, the affidavit is all that the taxpayer need provide. The Government argues that Mattatall's position is frivolous, and the Court agrees. Section 7602 of the Internal Revenue Code authorizes the IRS to examine "any books, papers, records, or other data" which "may be relevant" to an inquiry into "the correctness of any [tax] return." 26 U.S.C. §7602(a)(1). [Mattatall's] assertion that an affidavit is sufficient is unfounded.

exemptions were correct as reported.[8]  Mr. Mattatall did not offer any other documentation to respondent.

On January 31, 2005, the trial in petitioners' case was held.  During the trial, petitioner introduced into evidence only the four affidavits previously produced by Mr. Mattatall to substantiate the disallowed losses, deductions, and exemption. Although petitioner testified that he had records to support the claimed deductions and losses, he did not provide the records to respondent before trial as required by the Court's Standing Pretrial Order, nor did petitioner offer them into evidence at trial.

Petitioners contend that they have been denied due process because they were deprived of the opportunity to substantiate the amounts reported on their returns during the December 9, 2004, meeting.

## Discussion

Burden of Proof Generally

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous.  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  However, the burden of proof may shift to the Commissioner under section 7491(a) if the

---

[8]Mr. Doudney made two affidavits, one for 1999 and one for 2000.  Mrs. Doudney also made one affidavit for 1999 and one for 2000.

taxpayer has produced credible evidence relating to the tax liability at issue and has met his substantiation requirements, maintained required records, and cooperated with the Secretary's reasonable requests for documents, witnesses, and meetings.

Petitioners have produced no credible evidence supporting their disputed capital transactions or their disallowed deductions and exemption. Petitioners produced only summary "Affidavits of Fact" that declared the accuracy of each line of petitioners' amended returns. Petitioners made no effort to provide respondent with any receipts, canceled checks, copies of invoices, or other records to substantiate the items claimed on their amended returns that respondent disallowed. Because petitioners failed both to cooperate with respondent and to substantiate their losses and deductions, we conclude that petitioners did not satisfy the requirements of section 7491(a) and that the burden of proof remains with petitioners on all issues.

Capital Transactions

Section 1001(c) requires all gains or losses on the sale of capital assets to be reported on the taxpayer's return, unless a separate Code section provides otherwise. Although petitioners provided some documentation during the examination to substantiate a small capital loss for 1999, petitioners did not substantiate the remaining losses claimed. At trial, petitioners

did not produce any credible evidence to substantiate the claimed losses or to contest respondent's determination that petitioners had long-term capital gain income for 1999.[9]  Instead, petitioners relied solely on the four summary affidavits submitted to respondent during the examination of their 1999 and 2000 amended returns.

Because petitioners have failed to prove that respondent's determinations disallowing petitioners' capital losses and adjusting petitioners' capital gain income are in error, we sustain respondent's determination recalculating petitioners' capital gain income for 1999 and respondent's determination disallowing the balance of petitioners' 1999 capital losses.

Substantiation of Deductions

Petitioners deducted business expenses on Schedules C and F and claimed itemized deductions on Schedule A for 1999 and 2000. The pertinent Code sections authorizing such deductions are sections 162(a), 164, and 170.

Under section 162(a), a taxpayer may deduct ordinary and necessary business expenses incurred or paid during the taxable year.  An ordinary expense is one that is common and acceptable in the particular business.  Welch v. Helvering, 290 U.S. at 113-114.  A necessary expense is an expense that is appropriate and

---

[9]Respondent's capital gain adjustment for 1999 resulted from respondent's disallowing the basis claimed by petitioners in connection with reported sales of some stock.

helpful in carrying on a trade or business.  Heineman v.
Commissioner, 82 T.C. 538, 543 (1984).

Under section 164, a taxpayer may deduct State and local
real property and income taxes paid or accrued during the taxable
year.  A real property tax is one that is imposed upon real
property to benefit the general public welfare.  Sec. 1.164-3(b),
Income Tax Regs.  A State or local tax is one that is imposed by
a State, by a possession of the United States, by a political
subdivision of either, or by the District of Columbia.  Sec.
1.164-3(a), Income Tax Regs.

Section 170 allows a deduction for charitable contributions
made to qualifying organizations.  A taxpayer claiming a
charitable deduction of money must maintain a copy of the
donation check, a receipt of the donation by the donee
organization, or some other reliable written evidence of
donation.  Sec. 1.170A-13(a)(1), Income Tax Regs.  Contributions
of property require, at a minimum, a receipt by the donee
including the name of the donee, the date and location of the
donation, and a reasonable description of the property donated.
Sec. 1.170A-13(b).  Where it is unrealistic to obtain a receipt,
the taxpayer must maintain reliable written records of his
contributions.  See id.

All deductions, however, are a matter of legislative grace,
and the taxpayer must clearly demonstrate entitlement to the

claimed deductions. INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992). A taxpayer must keep records adequate to allow the Commissioner to establish the amount of his deductions. See sec. 6001; sec. 1.6001-1(a), Income Tax Regs. A taxpayer must also produce those records upon request for inspection by authorized internal revenue officers or employees. Sec. 7602(a); sec. 1.6001-1(e), Income Tax Regs. We are not required to accept an interested party's self-serving testimony that is uncorroborated by persuasive evidence. See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986).

Petitioners' position throughout this case has been that they have adequately substantiated their Schedules A, C, and F expenses because they stated under oath that the expenses were correct. That position is wrong, and we reject it. Petitioners had an obligation to substantiate their deductions in the manner required by the Code. Sec. 6001; sec. 1.6001-1(e), Income Tax Regs. Petitioners also had an obligation to produce the required records upon request by respondent. Sec. 7602(a). The affidavits were not sufficient to satisfy petitioners' affirmative obligation under sections 6001 and 7602 to keep records substantiating their deductions and to produce those records to respondent upon request. See, e.g., Kolbeck v. Commissioner, T.C. Memo. 2005-253.

Because we do not disturb respondent's determination when the only evidence offered to refute it consists of petitioner's self-serving testimony and affidavits that the expenses claimed are correct and accurate, we sustain respondent's determination disallowing petitioners' claimed Schedules A, C, and F expenses for 1999 and 2000. Geiger v. Commissioner, T.C. Memo. 1969-159 (citing Halle v. Commissioner, 7 T.C. 245, 247 (1946), affd. 175 F.2d 500 (2d Cir. 1949)), affd. 440 F.2d 688 (9th Cir. 1971).

Dependency Exemption

Section 151(a) and (c)(1) allows a taxpayer to claim a personal exemption for each dependent. In order to be entitled to the deduction, the taxpayer must show that the person for whom a dependency exemption is claimed meets the statutory definition of "dependent". See sec. 152(a)(1). Although petitioners claimed that they were entitled to a dependency deduction for a child on their 2000 amended return, petitioners did not introduce any credible evidence to establish that the child satisfied the definition of dependent under section 152. Consequently, we sustain respondent's determination disallowing the dependency exemption petitioners claimed for a child for 2000.

Section 6651(a) Addition to Tax

Section 6651(a) imposes an addition to tax for failure to file a return in the amount of 5 percent of the tax liability required to be shown on the return for each month during which

such failure continues, but not exceeding 25 percent in the aggregate, unless it is shown that such failure is due to reasonable cause and not due to willful neglect.  See sec. 6651(a)(1); United States v. Boyle, 469 U.S. 241, 245 (1985); United States v. Nordbrock, 38 F.3d 440, 444 (9th Cir. 1994); Harris v. Commissioner, T.C. Memo. 1998-332.

Section 7491(c) imposes the burden of production with respect to additions to tax on the Commissioner.  Once the Commissioner produces evidence that it is appropriate to impose on a taxpayer the additions to tax, the taxpayer must then prove that he is not liable for them.  Higbee v. Commissioner, 116 T.C. 438, 447 (2001).

In this case, respondent did not satisfy his burden of production under section 7491(c).  The extremely sparse record in this case includes no evidence whether original returns were filed and, if so, when.[10]  The only returns in the record are petitioners' amended returns for 1999 and 2000.  The only filing date in the record is the filing date for the amended returns.  Because respondent has failed to produce any evidence that petitioners failed to file timely original returns for 1999 and

---

[10]In his pretrial memorandum, respondent represented that "Respondent's agent filed substitute filed returns (SFR's) for taxable years 1999 and 2000."  However, statements in pretrial memoranda are not evidence.  Respondent did not introduce Forms 4340, Certificates of Assessments, Payments, and Other Specified Matters, or any other evidence from which we could determine that petitioners failed to file timely returns for 1999 and 2000.

2000, we do not sustain respondent's determination that petitioners are liable for the section 6651(a)(1) addition to tax for 1999 and 2000.

Due Process

Petitioners' principal argument in this case is that they were denied due process during the December 9, 2004, meeting with respondent. Although petitioners' argument is not entirely clear, we understand the argument to be that petitioners were entitled to document their return positions by affidavits and that respondent denied them due process by refusing to accept the affidavits.

Due process requires that an "adequate opportunity * * * [be] afforded for a later judicial determination of the legal rights" of the taxpayer. Phillips v. Commissioner, 283 U.S. 589, 595 (1931). An adequate opportunity requires that the taxpayer be heard "'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)); see also Harper v. Commissioner, 99 T.C. 533, 542 (1992) (Petitioner not denied due process where he was "afforded ample opportunity to be heard and explain"). Petitioner's right to a trial in this Court satisfies that requirement. See Catania v. Commissioner, T.C. Memo. 1986-437.

Petitioners have not been denied their due process rights. They had several opportunities to verify the amounts reported on their returns both before and during this litigation. Petitioners did not produce records substantiating their disputed return positions during the examination of their amended returns, nor did they produce any at the December 9, 2004, meeting or for trial. Petitioners adamantly insisted that the affidavits were sufficient to satisfy their obligations to maintain records and produce them to respondent upon request. Although petitioners' position was misguided and ill-advised, they had opportunities during the examination and during trial to be heard at a meaningful time and in a meaningful manner. Consequently, we reject petitioners' due process argument.

To reflect the foregoing,

<u>Decisions will be entered under Rule 155</u>.